1  KAREN P. HEWITT
   United States Attorney
2  CHRISTOPHER P. TENORIO
   Assistant U.S. Attorney
3  California State Bar No. 166022
   880 Front Street, Suite 6293
4  San Diego, California  92101-8893
   Telephone: (619) 557-7843
5  Christopher.Tenorio@usdoj.gov

6  Attorneys for Plaintiff
   United States of America

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,        )  Criminal Case No.  08CR0889-H
                                    )
11               Plaintiff,         )  DATE:     May 12, 2008
                                    )  TIME:     2:00 p.m.
12      v.                          )
                                    )  GOVERNMENT'S RESPONSE IN
13 RAMIRO VEGA-SENDEJAS,            )  OPPOSITION TO DEFENDANT'S
                                    )  MOTIONS TO:
14               Defendant.         )
                                    )  1)   COMPEL DISCOVERY; AND,
15                                  )  2)   DISMISS INDICTMENT DUE TO
                                    )       MISINSTRUCTION OF THE JURY
16                                  )
                                    )  TOGETHER WITH STATEMENT OF FACTS
17                                  )  AND MEMORANDUM OF POINTS AND
                                    )  AUTHORITIES
18 _____ )

19      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

20 its counsel, Karen P. Hewitt, United States Attorney, and Christopher

21 P. Tenorio, Assistant United States Attorney, and hereby files its

22 response in opposition to Defendant's above-titled motions.  Said

23 response is based upon the files and records of the case, together

24 with the attached Statement of Facts and Memorandum of Points and

25 Authorities.

26 //

27 //

28 //

# I.

## STATEMENT OF FACTS

### A.    PRESENT OFFENSE

On March 3, 2008, Defendant Ramiro Vega-Sendejas activated a seismic intrusion device in an area known as "White Cross," located approximately four miles east of the Otay Mesa Port of Entry and approximately one hundred yards north of the United States/Mexico International boundary. Border Patrol Agent Christopher Henderson encountered Defendant and seven others hiding in heavy brush. Pursuant to an immigration inspection, all of the individuals, including Defendant, stated that they were Mexican citizens with no immigration documents to permit them to be or remain in the United States. At approximately 2:00 a.m., Agent Henderson arrested Defendant and the others and transported them to the Chula Vista Border Patrol Station.

At approximately 9:20 a.m., Border Patrol Agent Rigoberto Garcia advised Defendant of his <u>Miranda</u> rights in Spanish. Defendant invoked his right to remain silent. At approximately 10:00 a.m., Agent Henderson advised Defendant in Spanish of his right to contact the Mexican Consulate. Defendant stated that he understood but declined to exercise his right.

Defendant was subsequently indicted on March 26, 2008 for Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326(a) and (b).

### B.    PRIOR HISTORY

#### 1.    Criminal History

Defendant's prior criminal convictions include a felony conviction for Residential Burglary on January 8, 2004, in violation

of California Penal Code, Section 459, in the Superior Court of Monterey County.

### 2. **Immigration History**

A Final Administrative Removal Order for Defendant's deportation was issued on February 13, 2008. Defendant was deported on February 14, 2008 through the Calexico Port of Entry.

**II.**

### **THE GOVERNMENT WILL PROVIDE DISCOVERY AS PROVIDED HEREIN**

Except as described below, the Court should deny Defendant's discovery requests.

### 1. **Rule 16(a)(1)(A): Defendant's Statements**

The Government has disclosed all known written and statements of the Defendant and the substance of oral statements made by the Defendant in response to questions by government agents in this case.

### 2. **Documents, Arrest Reports, and Tangible Evidence**

In accordance with obligations under Rule 16(a)(1)(C) and 16(c), the Government will permit the Defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within or may come within the possession, custody, or control of the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the Defendant.

### 3. **Rule 16, and Brady: For Exculpatory Evidence**

The Government is well aware of, and will fully perform, its duty under, Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976). Accordingly, the Government will disclose

exculpatory evidence within its possession that is material to the issue of guilt.  Defendant is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the Government's case.  As the Ninth Circuit Court of Appeals stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-75 (citations omitted).  See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government is not required to create non-existent exculpatory material); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

### 4.    Rule 16, and Brady: For Sentencing

The Government is also well aware of, and will fully perform, its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) regarding evidence pertaining to punishment.  Accordingly, and consistent with its position stated above, the Government will disclose exculpatory evidence within its possession that is material to the issue of punishment.

### 5.    Rule 16(a)(1)(A), (B), and (C): Prior Record

The Government has already provided Defendant with arrest reports, judgment and conviction documents for prior offenses and other evidence of prior bad acts pursuant to Rules 16(a)(1)(A), (B) and (C).

//

1

### 6.   **Rule 16(a)(1)(C) and Fed. R. Evid. 404(b): Prior Arrests, Convictions Or Bad Acts**

2

3     The Government reserves the right to introduce such prior bad

4  acts, and will address such evidence and its intentions in motions <u>in</u>

5  <u>limine</u> to be filed separately according to the Court's scheduling

6  orders.

7           ### 7.   <u>**Rule 16(a)(1)(C): Evidence Seized**</u>

8     In accordance with obligations under Rule 16(a)(1)(C) and 16(c),

9  the Government will permit the Defendant to inspect and copy or

10 photograph all books, papers, documents, photographs, tangible

11 objects, buildings, or places, or portions thereof, which are within

12 or may come within the possession, custody, or control of the

13 Government, and which are material to the preparation of the

14 Defendant's defense or are intended for use by the Government as

15 evidence-in-chief at trial or were obtained from or belong to the

16 Defendant.

17           ### 8.   <u>***Henthorn* Material**</u>

18     Pursuant to <u>United States v. Henthorn</u>, 831 F.2d 29, 30 (9th Cir.

19 1991), the Government will comply with its responsibilities to review

20 the personnel files of its agents who may serve as witnesses; and the

21 Government will disclose any impeachment information regarding

22 criminal investigations.  The Government is presently unaware of any

23 criminal involvement by any prospective government witness, or that

24 any prospective government witness is under investigation.   The

25 Government objects to Defendant's request that the Assistant United

26 States Attorney personally review all personnel files of prospective

27 witnesses.

28 //

### 9.   Expert Witnesses

The Government will meet obligations pursuant to Fed. R. Crim. P. 16(a)(1)(E) to disclose information regarding expert witnesses. The Government anticipates presenting testimony of a fingerprint examination expert witness who will identify Defendant's fingerprints on documents from his A-file.  The Government will produce details regarding the nature of the expert's testimony, and the qualifications of the expert when a trial date is scheduled and any expert is obtained.

### 10.   Impeachment Evidence

The Government is unaware of any impeachment evidence of a prospective government witness is biased or prejudiced against Defendant.  The Government is aware of, and will comply with, its obligations regarding impeachment evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

### 11.   Evidence of Criminal Investigations of Witnesses

The Government is currently unaware of any pending criminal investigations against a prospective government witness is biased or prejudiced against Defendant.  The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and provide such evidence if and when it becomes known.

### 12.   Evidence of Bias, Motive to Lie of Government Witnesses

The Government is unaware of any evidence indicating that a prospective government witness is biased or prejudiced against Defendant.  The Government is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

08CR0889-H

The Government is aware of, and will comply with, its obligations to provide such evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

### 13.   Evidence of Criminal Investigation of Witnesses

The Government is unaware of any evidence indicating that a prospective government witness is currently under criminal investigation by the Government.

### 14.   Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity

As addressed in items 12-14 above, the Government is unaware of any evidence affecting the perception, recollection, ability to communicate, or veracity of any prospective Government witness. The Government will provide such evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), if and when it comes to light.

### 15.   The Government Is Unaware of Favorable Defense Witnesses

The Government is unaware of any witness who made a favorable statement concerning the Defendant, or of any statement that may be favorable to Defendant's defense, which have not already been provided in discovery.

### 16.   Jencks Act

Consistent with the Jencks Act, 18 U.S.C. § 3500, the Defendant is not entitled to disclosure of witness statements prior to the witness testifying on direct examination at trial. The Government must produce these statements only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.). Indeed, even material believed to be exculpatory and, therefore,

1  subject to disclosure under the <u>Brady</u> doctrine, if contained in a

2  witness statement subject to the Jencks Act, need not be revealed

3  until such time as the witness statement is disclosed under the Act.

4  See <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

5      The Government reserves the right to withhold the statements of

6  any particular witnesses until after they testify. However,

7  notwithstanding any statements the Government deems necessary to

8  withhold, the Government will disclose witness statements prior to

9  trial in as timely a manner as practicable, provided defense counsel

10  has complied with his obligations under Rules 12.1, 12.2, 16 and 26.2

11  of the Federal Rules of Criminal Procedure, and provided that defense

12  counsel submitted all reciprocal discovery and "reverse Jencks"

13  statements.

14      The Government will comply with its Rule 26.2 obligation to

15  produce for the Defendant's examination statements of witnesses in the

16  Government's possession after, or shortly before, such witnesses

17  testify on direct examination. The Government objects to the

18  Defendant's request that such statements be produced at this time.

19  Similarly, if Rule 12(i) becomes relevant pursuant to suppression

20  proceedings, the Government will comply with obligations to produce

21  statements in accordance with Rule 26.1.

22          **17.  The Government Will Comply With _Giglio_**

23      The Government has not made any promises, express or implied, to

24  any government witnesses in exchange for their testimony in this case.

25  Therefore, the Government is currently unaware of any discoverable

26  impeachment information pursuant to <u>Giglio v. United States</u>, 405 U.S.

27  150 (1972).

28  //

1        **18.   Agreements Between the Government and Witnesses**

2        Consistent with its obligations pursuant to Giglio, stated above,

3    the Government will provide any agreements with witnesses.  To date,

4    however, none exist.

5        **19.   Informants and Cooperating Witnesses**

6        Consistent with its acknowledged obligation to provide discovery

7    of prospective witnesses' statements, the Government would provide the

8    requested evidence.  To date, however, the Government has not employed

9    any informants or cooperating witnesses in the present case.

10                                  **III**

11        **THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY,**
         **AND THE INDICTMENT SHOULD NOT BE DISMISSED**

12

13        **1.   Introduction**

14        The present response is the standard response provided by the

15    U.S. Attorney's Office to the standard motion filed by Federal

16    Defenders of San Diego, Inc. regarding the above-captioned issue.  It

17    was the understanding of Government Counsel that an agreement had been

18    entered by the two offices such that the issue would be pursued on

19    appeal in only one case.  Because Defendant filed a similar motion,

20    however, the Government will file its standard response in an

21    abundance of caution.

22        Defendant makes contentions relating to two separate instructions

23    given to the grand jury during its impanelment by District Judge Larry

24    A. Burns on January 11, 2007.[1/]  Although recognizing that the Ninth

25

26        [1/]   Defendant supplies a "Partial Transcript" of the grand jury

27    proceedings which records the instructions to the impaneled grand

28    jurors after the voir dire had been conducted.  [Appendix 1.]   To

Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the indictment on two separate basis relating to grand jury procedures both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercise its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the

amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings. [Appendix 2.]

second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment. [Defendant's Memorandum ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted)[2/]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in

---

[2/]    In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

helping you to find your way when confronted with complex legal problems.  It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]   408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties.  The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . .  The instructions balance the praise for the government's attorney by informing the grand jurors

_____

[3/]   The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.  For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original.)

that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

### 2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.

And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4]

---

[4]    The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals.  This transcript involves the voir dire portion of the grand jury selection process, and has been redacted,  to include redaction of the individual names,

1   Defendant acknowledges that, in line with <u>Navarro-Vargas</u>, "Judge

2   Bums instructed the grand jurors that they were forbidden 'from

3   judg[ing] the wisdom of the criminal laws enacted by Congress; that

4   is, whether or not there should be a federal law or should not be a

5   federal law designating certain activity [as] criminal is not up to

6   you.'"  Defendant notes, however, that "[t]he instructions go beyond

7   that, however, and tell the grand jurors that, should 'you disagree

8   with that judgment made by Congress, then your option is not to say

9   'well, I'm going to vote against indicting even though I think that

10  the evidence is sufficient' or 'I'm going to vote in favor of even

11  though the evidence maybe insufficient.'"  Defendant contends that

12  this addition to the approved instruction, "flatly bars the grand jury

13  from declining to indict because the grand jurors disagree with a

14  proposed prosecution."  Defendant further contends that the flat

15  prohibition was preemptively reinforced by Judge Burns when he

16  "referred to an instance in the grand juror selection process in which

17  he excused three potential jurors," which resulted in his "not only

18  instruct[ing] the grand jurors on his view of their discretion; [but

19  his] enforc[ing] that view on pain of being excused from service as

20  a grand juror."[5/]

21      In concocting his theory of why Judge Burns erred, Defendant

22  posits that the expanded instruction renders irrelevant the debate

23

24  to provide only the relevant three incidents wherein prospective grand

25  jurors were excused.  Specifically, the pages of the Supplemental

26  Transcript supplied are: page 15, line 10 - page 17, line 18; page 24,

27  line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

28      [5/]    See Appendix 2.

about what the word "should" means.   Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution."   This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one.   They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws.   The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion.   Jury nullification is forbidden although acknowledge as a sub rosa fact in grand jury proceedings.   Id. at 1204.   In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.   Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.   As we will establish this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.   Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution because they do not say that.   That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6]   408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is

---

[6]    That instruction is not at issue here.   It read as follows:

    [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to

Found"). This other instruction bestows discretion on the grand jury not to indict.[2/] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that

_____

> conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[2/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (per curiam)). In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand

1  jurors, but merely bespeaks a reminder to the grand jury of their

2  duties.

3      Finally, even if there was an error, Defendant has not

4  demonstrated he was actually prejudiced thereby, a burden he has to

5  bear. "Absent such prejudice-that is, 'absent 'grave' doubt that the

6  decision to indict was free from the substantial influence of [the

7  misconduct]' - a dismissal is not warranted." Isgro, 974 F.2d at

8  1094.

9          **3.    The Addition to the "United States Attorney and his
           Assistant United States Attorneys" Instruction Did Not**
10         **Violate the Constitution**

11      Concerning the new grand jurors' relationship to the United

12  States Attorney and the Assistant U.S. Attorneys, Judge Burns

13  variously stated:

14      [T]here's a close association between the grand jury and
        the U.S. Attorney's Office.
15      . . .
        You'll work closely with the U.S. Attorney's Office in your
16      investigation of cases.

17  Partial Transcript p. 11

18      [I]n my experience here in the over 20 years in this court,
        that kind of tension does not exist on a regular basis,
19      that I can recall, between the U.S. Attorney and the grand
        juries. They generally work together.
20

21  Partial Transcript p. 12.

22      Now, again, this emphasizes the difference between the
        function of the grand jury and the trial jury. You're all
23      about probable cause. If you think that there's evidence
        out there that might cause you to say "well, I don't think
24      probable cause exists," then it's incumbent upon you to
        hear that evidence as well. As I told you, in most
25      instances, the U.S. Attorneys are duty-bound to present
        evidence that cuts against what they may be asking you to
26      do if they're aware of that evidence.

27

28

Partial Transcript p. 20.[8/]

> As a practical matter, you will work closely with
> government lawyers. The U.S. Attorney and the Assistant
> U.S. Attorneys will provide you with important services and
> help you find your way when you're confronted with complex
> legal matters. It's entirely proper that you should
> receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether
> a case goes forward and an indictment should be returned is
> yours and yours alone. If past experience is any
> indication of what to expect in the future, then you can
> expect that the U.S. Attorneys that will appear in front of
> you will be candid, they'll be honest, that they'll act in
> good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Id.] Thereafter, Defendant contends:

> These <u>instructions create a presumption</u> that, in cases
> where the prosecutor does not present exculpatory evidence,

---

[8/]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily . .
> . . Because it's not a full-blown trial, you're likely in
> most cases not to hear the other side of the story, if
> there is another side to the story.

Partial transcript p. 19.

no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Defendant's Memorandum.] (emphasis added.)[9/]

Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to

_____

[9/]     The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

do if they're aware of that evidence," however, is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.") (emphasis added);[10/] <u>see also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose '<u>substantial</u> exculpatory evidence' to a grand jury.") (citing <u>Williams</u>) (emphasis added).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand

---

[10/]    Note that in <u>Williams</u> the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55; <u>see also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

jury.[11/]   As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM"),[12/] which provides as follows:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

USAM Section 9-11.233 (emphasis added.)[13/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose

_____

[11/]   He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12/]   The USAM is available on-line at: www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html

[13/]   See: www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.html

Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233."  (Emphasis added.)[14]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant

---

[14]    See:

www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E."

[15]    Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/]   There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In Isgro, the Ninth Circuit, while reviewing Williams, established that there is nothing in the Constitution which

_____

[16/]   Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("<u>Williams</u> clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by <u>Navarro-Vargas</u>.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by <u>Navarro-Vargas</u>.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not mean the instructions were

---

[17]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per <u>Williams</u>, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1  constitutionally defective requiring dismissal of this indictment or
2  any indictment.

3      The "duty bound" statement constitutional contentions raised by
4  Defendant do not indicate that the "'structural protections of the
5  grand jury have been so compromised as to render the proceedings
6  fundamentally unfair, allowing the presumption of prejudice' to the
7  defendant," and "[the] defendant can[not] show a history of
8  prosecutorial misconduct that is so systematic and pervasive that it
9  affects the fundamental fairness of the proceeding or if the
10  independence of the grand jury is substantially infringed." Isgro,
11  974 F.2d at 1094 (citation omitted). Therefore, this indictment, or
12  any other indictment, need not be dismissed.

**IV**

**CONCLUSION**

15      Based on the foregoing, the Court should deny Defendant's above-
16  titled motions.

17      DATED: May 1, 2008

                                          Respectfully submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          s/ Christopher P. Tenorio
                                          CHRISTOPHER P. TENORIO
                                          Assistant U.S. Attorney

1

2

3                      UNITED STATES DISTRICT COURT

4                    SOUTHERN DISTRICT OF CALIFORNIA

5   UNITED STATES OF AMERICA,      )   Criminal Case No.  08CR0889-H
                                   )
6                    Plaintiff,    )      **CERTIFICATE OF SERVICE**
                                   )
7        v.                        )
                                   )
8   RAMIRO VEGA-SENDEJAS,          )
                                   )
9                    Defendant.    )
    ───────────────────────────────)

10

11  IT IS HEREBY CERTIFIED that:

12      I, CHRISTOPHER P. TENORIO, am a citizen of the United States and

13  am at least eighteen years of age.  My business address is 880 Front

14  Street, Room 6293, San Diego, California 92101-8893.

15      I am not a party to the above-entitled action.  I have caused

16  service of **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS**

17  on the following party by electronically filing the foregoing with the

18  Clerk of the District Court using its ECF System, which electronically

19  notifies them:

20      **Siri Shetty, Esq.**

21      I declare under penalty of perjury that the foregoing is true and

22  correct.

23  Executed on May 1, 2008

24                                      Respectfully submitted,

25                                      KAREN P. HEWITT
                                        United States Attorney
26
                                        _s/Christopher P. Tenorio_
27                                      CHRISTOPHER P. TENORIO
                                        Assistant U.S. Attorney
28

                                                              08CR0889-H